UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John-Henry: Doe

Claimant;

V.

*Case No: 19.1294 DWF/SER*
*(to be assigned by Clerk of Court)*

MOWER COUNTY SHERIFF OFFICE;

OFFICER JIM LAMECKER;

AUSTIN POLICE DEPARTMENT;

OFFICER JOHN MUELLER;

OFFICER RYAN LEIF;

OFFICER RYAN MCCORMACK;

OFFICER DAVE DYKE.

Defendants.

---

### Jurisdiction:

This Court has jurisdiction pursuant of Article III Section II of the Constitution for the United States of America and 42 U.S.C. 1983, 18 U.S.C. 241, 242, 245.

### Status of Parties:

**Within the realm of the law, the most significant identity anyone can have is his "status." From his posisition and standing, in relation to the State and it's agents and officers.**

**Claimant:** Man (Genesis 1:26) with "dominion over the land,", Moor: National, with unalienable "birth rights" secured by the Federal and state Constitutions, operating in "original jurisdiction," as one of the "original people."

**Defendants:** "persons," U.S. citizens, public servants, subjects with limited jurisdiction, under oath of office to uphold and support the state and Federal Constitutions.

### Complaint

### 42 U.S.C. 1983; Fraud; Extortion; Conspiracy Against Rights

**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States**

1

STAMPED
MAY 16 2019
U.S. DISTRICT COURT MPLS

**or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress;**

**Title 18. CRIMES AND CRIMINAL PROCEDURE Part I. CRIMES Chapter 13. CIVIL RIGHTS Section 241. "Conspiracy against rights" (18 U.S.C. 241)**

**"If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or**

**If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured— They shall be fined under this title or imprisoned not more than ten years, or both;**

**Title 18. CRIMES AND CRIMINAL PROCEDURE Part I. CRIMES Chapter 13. CIVIL RIGHTS Section 245. Federally protected activities**

**(b) Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—(1)(E) traveling in or using any facility of interstate commerce, or using any vehicle, terminal, or facility of any common carrier by motor, rail, water, or air; (4) any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from— (A) participating, without discrimination on account of race, color, religion or national origin, in any of the benefits or activities described in subparagraphs (1)(A) through (1)(E) or subparagraphs (2)(A) through (2)(F); shall be fined under this title, or imprisoned not more than one year, or both;**

**Fraud**: the intentional use of deceit, a trick or some dishonest means to _deprive_ another of his/her _money_, property or a _legal right_; consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury.

**Extortion:** the practice of obtaining something, especially money, through _force or threats_.

The Defendants, under color of STATE statute, custom and usage, **subjected and caused to be subjected the Claimant**, to the deprivation of rights, and conspired to injure, oppress, threaten and intimidate the Claimant in the free exercise and enjoyment of his rights secured by the Constitution and Laws of the United States and because the Claimant so exercised the same, the Defendants, by force, threat, intimidation and interference deprived the Claimant of his freedom of movement and travel in his private automobile upon the roadways and highways, fraudulently deprived the Claimant of his property, money and legal rights causing him injury, and extorted the Claimant by way of force and threats, as made more explicit herein.

On Monday, May 6th 2019, around 1:00 p.m. The Claimant was visiting the MOWER COUNTY COURT HOUSE to gather information in regards to a court case he was dealing with, when the Claimant came into contact with the MOWER COUNTY SHERIFF OFFICER, JIM LAMECKER and another unidentified [female] MOWER COUNTY SHERIFF OFFICER, who's job is to "search people at the doors of the said MOWER COUNTY COURT HOUSE," and not to "run identity checks" of the people whom enter said MOWER COUNTY COURT HOUSE (as stated by Austin Police Department Chief). After entering the MOWER COUNTY COURT HOUSE, the Claimant approached the unidentified female Sheriff's officer and started discussing what the Claimant believes is a rights violation pursuant of the court case he was gathering information about. After conversing with the unidentified female Sheriff's officer for several minutes about filing a possible complaint at the SHERIFF'S OFFICE in regards to a rights violation about the court case the Claimant was gathering information on, the Claimant left the MOWER COUNTY COURT HOUSE and got into

his private automobile and started to travel a few blocks away from the MOWER COUNTY COURT HOUSE in which the Claimant was then pulled over by OFFICER MCCORMACK of the AUSTIN POLICE DEPARTMENT. The Claimant, was suspicious as to why the Claimant was even being stopped, as he did not cause injury or damage to another human being or their property, nor was there any emergency, nor was the Claimant involved in any "criminal activity" in which would give rise to "probable cause" for the said stop and hindrance of his freedom of movement, right to privacy, and right to be left alone. However, after OFFICER MCCORMACK approached the Claimant's private property (automobile), OFFICER MCCORMACK stated that the "MOWER COUNTY SHERIFF OFFICER [JIM LAMECKER] from the MOWER COUNTY COURT HOUSE radioed OFFICER MCCORMACK because he (apparently) ran the Claimant's "name" and found that the Claimant's "driver license" was "canceled" and instructed OFFICER MCCORMACK to follow the Claimant and pull him over. This action by OFFICER JIM LAMECKER is questionable when he had absolutely no reason for "running the Claimant's name" or finding out if the Claimant's "misnomer" "driving privileges" were "canceled." It seems as if JIM LAMECKER was upset about the Claimant attempting to gather information about his rights being violated and conspired to violate the Claimant's rights even more, instead of protecting the Claimant's rights. This is allegedly when OFFICER JIM LAMECKER "radioed" in to OFFICER MCCORMACK to conspire to deprive the Claimant of his freedom of movement which is a right protected by the Constitution and laws of the United States that does not require the Claimant to possess a so called "<u>drivers license</u>" when exercising this right. OFFICER MCCORMACK was then insisting to the Claimant that the Claimant was "<u>operating</u>" a "<u>motor vehicle</u>" without a "<u>drivers license</u>" and was the reason for the "<u>traffic</u>" stop, in which MCCORMACK INSISTED was a "<u>crime</u>" and assuming that the Claimant was operating his private automobile in "<u>commerce</u>" in a "for profit nature." A few minutes after MCCORMACK hindered the Claimant's freedom of movement, OFFICER LEIF AND OFFICER DYKE pulled up behind MCCORMACKS MOTOR VEHICLE and the Claimant's private automobile as-well, and approached the Claimant' private automobile on the right side of his automobile seemingly to intimidate the Claimant whereas at this point there was 3 officers surrounding the Claimant's private automobile in an attempt to submit the Claimant to the officer's "show of authority." At this point the Claimant demanded to speak with MCOCRMACKS supervisor, in which his supervisor JOHN MUELLER arrived a few minutes later and parked his unmarked MOTOR VEHICLE in front of the Claimant's private automobile, blocking the front of the Claimant's automobile seemingly to "box in" the Claimant, in which at this point, any reasonable man would feel as if he is "under seize and arrest." At this point the Defendant's were making the Claimant anxious as to why there were so many officers for such a minor matter considering there was no corpus delecti, probable cause, breach of the peace, or felonious crime committed for said stop and hindrance of the Claimant's freedom of travel and movement. The Claimant once again made clear to MUELLER that the Claimant was exercising his right of freedom of movement and did not commit any crimes to give rise for any probable cause for MCCORMACK to stop and deprive the Claimant of his liberty and demanded that the OFFICERS allow him to be on his way. However MUELLER did not move his MOTOR VEHICLE and allow the Clamaint to continue exercising his right, instead he instructed MCCORMACK to print a "citation" and cite the Claimant for "driving after cancellation" (See Minnesota Statute 171.24.3) in which it stated on said "citation" "PENALTIES FOR FAILURE TO RESPOND," MAY RESULT IN "A WARRANT FOR YOUR ARREST," PAY THE FINE, OR APPEAR IN COURT. Said "statement" on said "citation" is "paper terrorism" and intimidation by the Defendants to compel the Claimant to "pay money" and be extorted for exercising his rights, without a "<u>license</u>", or go appear in "traffic court," where the Claimant is deprived of a right to a trial by jury of his peers and cause the Claimant to waste more of his time going to "court" for a matter in which the Defendants have/had no standing to charge the Claimant for ab initio because the Claimant has no contract with the Defendants, nor did the Claimant injure anyone in his conduct (except the Claimant being the injured party in the matter) nor was the Claimant engaged in any other criminal activity. Furthermore, OFFICER MUELLER repeatedly threaten the Claimant with intent to intimidate the Claimant that if the Claimant continues to "travel" upon the roads in his automobile, that the Defendants will arrest the Claimant (without a warrant & for exercising his rights). The Defendants detained and seized the Claimant for estimated 25 minutes before threatening the Claimant with arrest if he continues to travel in his automobile, thus forcing the Claimant to exit his automobile and walk, depriving the Claimant of the right to use his private property [automobile], without due process of the law.

Considering the fact that the Claimant obtained a "valid driver's license" and a "permit" at one point in the past,

is sufficient evidence and proof that the Claimant is well aware of the common law rules of the road and that the Claimant is indeed "qualified" to manage and control his private automobile upon the roadways and highways and comprehends that he is to show and provide "due care" while traveling, whereas court cases below will show and prove, that is the ONLY thing the Claimant "owes" to the public whom may be driving or traveling upon the roadways as-well. Furthermore, the Claimant canceled his "contract" with the said License Bureau/DMV roughly 2 years ago, reserving his unalienable right to travel without said licensing contract.

There is absolutely no reason, as evidence and case laws prove, and provided by the Claimant in his exhibits, for the Claimant to continue "purchasing" a "plastic card" from the private business called the "DMV" and be forced to be associated with said private business in order to exercise his unalienable rights to go about his private life in his private property and be left alone from government intrusion and deprivations of freedoms as the Defendants caused to happen. By the Defendants conspiring to compel the Claimant to be associated with the License Bureau/DMV and purchase a "drivers license" [plastic card] every 2-4 years is only to provide a means to continue violating the Claimant's exercise of his rights and bring false claims against the Claimant so to extort more and more money from the Claimant in the form of fines and fees, and force the Claimant to be a customer of a private business against his will in order to exercise a right secured by the Constitution, or be threaten with arrests and jail. The Defendant's actions is "criminal racketeering" and extortion by intimidation by means of paper terrorism.

Officer MCCORMACK made the claim that he was "stopping the Claimant for a "traffic violation," however after careful examination of the legal definition of the word "traffic," the Defendants were "falsely assuming" that the Claimant was operating in "commerce" and subject to be required by statutes to obtain a "drivers license" in order to "travel" upon the roadways in the exercise of his freedoms, liberties, and rights to use his private automobile which cannot be "licensed" and converted into a "privilege," whereas said alleged traffic stop should of been dissolved of in less then a minute or two after the Claimant made known for the Defendants of his status that he was exercising his right of freedom of movement and not operating a motor vehicle for profit, instead the Defendants unlawfully proceeded to continue to detain/arrest/seize and interfere with the Claimant's personal liberty causing injury and loss of time, as per;

**TRAFFIC**: **Commerce; trade**; dealings in **merchandise**, bills, money. (See In re Ins. e Co. (D. C.) 96 Fed. 757; Levine v. State, 35 Tex. Cr. R. 647. 34 S. W. 960; People v. Hamilton, 17 Misc. Rep. 11, 39 N. Y. Supp. 531; Merriam v. Langdon, 10 Conn. 471.)

**"Commerce:"** means trade, traffic, and transportation of persons and property. (49 U.S.C. 31301)

**Commercial law**: also known as **trade** law, is the body of law [statutes] that applies to the rights, relations, and conduct of persons and businesses engaged in commerce, merchandising, trade, and sales. In the United States, commercial law is the province of both the United States Congress, under its power to regulate interstate commerce, and the states, under their police power.

Statutes at Large California Chapter 412 p.83 "Highways are for the use of the traveling public, and all have the right to use them in a reasonable and proper manner; the **use thereof is an inalienable right** of every citizen;"( See Escobedo v. State 35 C2d 870 in 8 Cal Jur 3d p.27 )

**"RIGHT** :— "A legal RIGHT, a constitutional RIGHT means a RIGHT protected by the law, by the constitution, but government does not create the idea of RIGHT or original RIGHTS; it acknowledges them." (Bouvier's Law Dictionary, 1914, p. 2961). "Those who have the right to do something cannot be licensed for what they already have right to do as such license would be meaningless."

**Driver:** One "**employed**" in conducting a coach, carriage, wagon, vehicle or motor car." (See Davis v. Petrinovich, 112 Ala. 654, 21 South. 344, 36, L.R. A. 615; Gen. St. Conn. 1902.

**EMPLOYED:** "This signifies both the act of doing a thing and the being under contractor orders to do it."

( U. S. v. Morris, 14 Pet. 475, 10 L. Ed. 543; U. S. v. The Catharine, 2Paine, 721, Fed. Cas. No. 14.755. A person who is hired for a wage, salary, fee or payment to perform work for an employer.

**"Driver's license:"** means a license issued by a State to an individual authorizing the individual to **operate** a **motor vehicle** on highways." (49 U.S.C. 31301)

**MOTOR VEHICLE**: Means every description or other contrivance propelled or drawn by mechanical power and **used for "commercial purposes"** on the highways in the transportation of passengers, or passengers and property [for profit]. (See 18 U.S.C. 31)

**"Used for commercial purposes"** means the carriage of persons or property for any fare, fee, rate, charge, or other considerations or directly or indirectly in connection with any business or undertaking intended for profit. (See Title 18 U.S.C. 31)

**Operator:** The court observed that this was a "vehicle for hire" and that it was in the business of carrying passengers. (See Newbill v. Union Indemnity Co. 60 SE 2d. 658)

**Traveler:** Those who have occasion to pass over the highways for the purpose of convenience, or pleasure. (Am.Jur. (1st), highways, sec 427)

 The Defendants were and are acting as **"Highwayman:"** AS PER: "A bandit; one who robs travelers upon the highway." ( Black's Law 4th Edition Dictionary p.862) a **thief** who robs travelers on a road.(Merriam-Webster Dictionary)

The Defendant's were in violation of the Claimant's right's, their job, their oaths of office and their "codes of ethics" the moment they declared an "emergency" by turning on their emergency lights to stop the Claimant when there was no emergency, which is is a felony when there is or was no emergency ab initio.

By the Defendants interfering with the Claimant's freedom of movement and right to travel freely, the Defendants violated their oath to the Constitution(s) and codes of ethics to "respect all men's rights secured by the Constitution," and the Defendants became "impostors in office" and an "outlaw employee" committing fraud by taking wages under false pretenses, color of office, and under color of law.

The implementation of codes, rules, regulations, and statutes are nothing more than "Ex Post Facto laws" absolutely forbidden by the Constitution for the United States of America and state Constitution as well, in which the Defendants swore an oath to uphold.

Said "oath of office" is binding upon the Defendants, pursuant of Public Law 97-280, the scriptures state in Hebrews 6:16 **"Now when people take an oath, they call on someone greater than themselves to hold them to it. And without any question that oath is binding**."

It is gross negligence of the Defendants to fail to distinguish between a statute and the Law, the "Law" being the Supreme Law of the Land, statutes, in this particular matter, being "corporate policies."

The said stop/arrest/detainment/seizure/deprivation of the Claimant's freedom of movement by the Defendants should of never happened if the Defendants were operating according to the Law of the Land in which their oath office commands them to do.

### No Immunity of the Defendants From Suit

The Defendants have NO immunity from this suit, for said "qualified immunity defense fails if public officers violate **clearly established rights** because a reasonably competent official should know the Law governing his conduct." (See Jones v. Counce 7-F3d-1359-8th Cir. 1993; Benitez v. Wolff 985-F3d 662 2nd. Cir. 1993)

"One who is wrongfully deprived of freedom sustains an intangible injury, the magnitude of which cannot be measured or assessed in physical terms. Although this injury may, in some cases also cause psychological or emotional trauma, a victim of false arrest or imprisonment need not experience such trauma to have a legally compensable claim." (Delacruz v. Borough of Hillsdale, 838 A. 2d. 498,-NJ Apellate Div. 2004)

The Supreme court held that State statutes, much like the ones the Defendants deprived the Claimant of his liberty under, do not take precedent over Constitutional law. (See James v. Kentucky, 466, US 341, 80, LED 2d. 346, 104 S. Ct. 1830 (1984). In this instant case, the Defendants, by applying commercial statutes to all men and corporations alike, has and are depriving the Claimant and the people of the right of liberty without cause and due process of the law, whereas the 5th Amendment is clear, "No person [man] shall be deprived of life, liberty, or property, without due process of the law." (Due process of the law mandates a warrant for the seizure and arrest of the people.)

<u>"When an individual is **detained** without a warrant and without having committed a crime, (traffic infractions are not crimes), the detention is a false arrest and false imprisonment." (Damages awarded: Trezevant v. City of Tampa, 241, F2d. 336,(11th Cir. 1984) "Motorist unlawfully held for 23 minutes in a "traffic charge" was awarded $25,000 in damages; the above case sets the foundation for $75,000 per hour, or $1,800,000 per day.</u>

<u>"If police falsely arrest you without probable cause [acting outside their authority as delegated by law], they have no qualified immunity and are liable for damages in their private person." (Malley v. Briggs, 475, US 335, (1986)</u>

<u>"Government may not prohibit or control the conduct of a person for reasons that infringe upon constitutionally guaranteed freedoms." (Smith v. U.S. 502, F2d. 512, CA Tex. (1974)</u>

<u>"The innocent individual (Claimant) who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury." (Owens v. City of Independence, 100 S. Ct. 1398. (1980)</u>

<u>"A plaintiff who seeks damages for violations of constitutional or statutory rights may overcome the defendants qualified immunity by showing that those rights were CLEARLY established at the time of the conduct issue." (Davis v. Scherer, 82 L.Ed 2d. 139, 151.)</u>

<u>"An unconstitutional act is not law; it confers no rights; imposes no duties; affords no protections; it creates no office; it is in legal contemplation as inoperative as though it had never been passed." (Norton v. Shelby County, 118, U.S. 425)</u>

<u>"The Constitution is a written instrument, as such, its meaning does not alter. That which it meant when it was adoptd, it means now." (S. Carolina v. U.S. 199 U.S. 437, 448, (1905)</u>

<u>The real law is the common law as described..The people are not "subject to law" generally except for the criminal codes that are codified common law. (Yick Wo v. Hopkins, 118, US 356, 370)</u>

<u>Article 13 (1) of the U.N. Declaration of Human Rights, as stipulated by Executive Order # 13107, "Implementation Of Human Rights Treaties," "Everyone has the right to freedom of movement..."No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence...Everyone has the right to the protection of the law against such interference..."</u>

<u>"All peoples are bound, without contract, to abstain from injuring the person or property of another, or infringing on any of his or her rights." Cal. Civil Code Sec. 1708.</u>

<u>"As a general rule of the law, men have the natural right to do anything which their inclinations may</u>

suggest, it if not be evil in itself, and in no way impairs the rights of others." (In re Newman 71, C.A. 386, 235, P. 664 (1925)

"The assertion of federal rights, when plainly and reasonably made, are not to be defeated under the name of local practice." (Davis v. Wechler, 263 U.S. 22, 24)

"No public policy of a State can be allowed to override the positive guarantees of the U.S. Constitution." (16 Am. Jur.(2nd) Constitutional Law, Section 70) And the Defendants, being sworn officers of the law, are deemed to know the law.

Although broad, police power is subject to restrictions of state and federal constitutions. Police power should not infringe upon protections contained in the U.S. constitution. Police power is thus limited by the rights guaranteed by the Constitution." The police powers of the State must be exercised in subordination to the provisions of the U.S. Constitution." (Bacahanan v. Wanley 245, US 60; Panhandle Eastern Pipeline Co. v. State Highway Commission, 294 US 613)

"With regard particulary to the U.S. Constitution, it is elementary that a Right secured or protected by that document cannot be overthrown or impaired by any State police authority." (Connolly v. Union Sewer Pipe Co. 184, US 540; Lafarier v. Grand Trunk R.R. Co. 24, A. 848; O'neil v. Providence Amusement Co. 108 A. 887.)

"**Police Officer**:" A revenue agent that enforces CORPORATE government contracts and protects the assets of the corporate government and compels performance of the licensee or contractors e.g. businesses and corporations."-- However, the Claimant has NO enforceable contracts with the Defendants or the corporate government that states anything about "obtaining a drivers license" in order to travel upon the roads and highways nor did the Claimant ever waive his rights secured by the Constitution to travel freely as per; Brady v. United States 397 U.S. 742, 90 S. Ct. 1463 (1970) RULE: "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Whereas "Traveling in an automobile on the public roads was not a threat to the public safety or health and constituted no hazard to the public, and such a traveler owed nothing more than "due care" to the public and the owner owed no other duty to the public e.g "STATE," he/she and his/her auto, having equal rights to and on the roadways/highways as horses and wagon etc.; this same right is still substantive rule, in that,...traveling without a license or license plates or registration are not threats to the public safety, and thus, are not arrest-able offenses." (Christy v. Elliot, 216, I 131, 74, HE 1035, LRA NS 1905-1910; California v. Farley, 98 CED Rpt. 89, 20 CA 3d 1032 (1971).

In the United States, state police power comes from the Tenth (10th) Amendment to the Constitution, which gives states the rights and powers "not delegated to the United States," meaning the states' police powers are the same as the federal police powers, but within the state's jurisdiction, and are limited to the "commerce clause" founded within Article 1 of the U.S. Constitution, and the common law.

Considering the Constitution for the United States of America is the Supreme Law of the Land, and any state statutes or Constitutions to the contrary, not withstanding, the Police Powers found in the Constitution are derived from the Commerce Clause found within the Constitution in Article 1, meaning the police of the States have broad powers over "commercial activity" within the jurisdiction of the States, however they only have common law jurisdiction when dealing with the natural people (Claimant); (See Cooley v Board of Wardens (1851) outlines the case for recognizing, as a constitutional matter, zones of exclusive federal authority over commerce and other zones of concurrent state and federal authority.") Thus the "police powers" of the "states" are "limited" in scope to the "police powers" of the "Federal government" of the "United States."

The 9th Amendment protects and reserves the Claimant's right to travel/freedom of movement unhindered by the police unless there is factual injury or damage of property caused that produces an "emergency", or an actual "crime" being committed in the presence of the officers, without said injury or damage to property or probable

cause that an actual crime was committed, by the Defendants pulling the Claimant over, the Defendants were acting "outside of their jurisdiction" unlawfully, period.

An "**emergency**" is defined as a "sudden, unexpected, or impending situation, involving injury, loss of life, damage to property, or catastrophic interference with normal activities and requires immediate attention and remedial action by authorities.

Again, there was no "emergency" no "breach of the peace," no felony act committed in the presence of the Defendants, thus no probable cause that a "crime" was committed for said detainment and seizure/arrest of the Claimant. Thus, the Defendants were acting under color of law to impose "corporate statutes" upon the Claimant whereas corporations are the "class of persons" of which are bound by the statutes of the State and it is imperative that a "conscienceless entity" not be allowed to roam the streets and highways in the 50 United States of America and jeopardize the sovereign people. It is for this purpose and this purpose alone that the said statutes the Defendants operate under were enacted for the control of corporations using the roads and highways in a for profit nature.

The Claimant is not a "corporation" which a corporation is a "creature of the State," the Claimant is a man with a soul, unalienable rights granted by his Creator, that cannot be infringed upon by other men or persons, which his rights are such existed by the law of the land long antecedent to the organization of the States. The Claimant owes NO DUTY TO THE STATE, he is entitled to carry on his private life and business in his own way, he has the right to be free from seizure and arrest except under a warrant of the law, he owes nothing to the public so long as he does not trespass upon their rights." (see Hale v. Henkel, 201 U.S. 43, (1906).

Th powers of the Defendants are subordinate to the rights of the Claimant, the Defendants authority are but "grants" of authority from the people, and are limited to protect the rights of the Claimant and regulate commercial activity of corporations.

Corporations engaged in mercantile equity fall under the purview of the Defendants' and State's "admiralty jurisdiction" of "compelled contractual performance," and the people at large must be protected under the States "police powers" from said corporations activities because protecting the people from corporations engaging in "privileged" activities falls under the Defendant's "police powers" that extend only to "immediate threats to public safety, health, and welfare" (See Michigan v. Duke.). However, Personal liberty largely consists of the right of locomotion--to go where and when one pleases--only so far restrained as the rights of others may make it necessary for the respect of all other peoples right of locomotion. The right of the Citizen to travel upon the public highways and to transport his property thereon, by horse drawn carriage, wagon or automobile, is NOT A MERE PRIVILEGE which may be permitted or prohibited at will, but the common right which he has under his right to life, liberty, and the pursuit of happiness. Under this constitutional guarantee one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be protected, not only in his person, but in his safe conduct."( II Am. Jur. (1st) Constitutional Law, Sect. 329, p. 1135.)

The Defendants neglected to "protect" the Claimant in his safe conduct, but rather, unlawfully interfered in the Claimant's safe conduct of his travel and disturbed the Claimant's rights.

"**Persons [people] are not the subjects of commerce**, and not being imported goods, they do not fall within the meaning founded upon the constitution, of a power given to congress [or the states], to regulate commerce..." (Ibid; Gibbons v. Ogen 9 Wheat 1; 5 Cond. Rep. 562.)

"Based upon the fundamental ground that the sovereign states has the plenary control of the streets and highways in the exercise of its police powers, may absolutely prohibit the use of the streets as a place for the prosecution of a private business for gain. They all recognize the fundamental distinction between the ordinary right of the Citizen to use the streets in the usual way and the use of the streets as a place of business or a main

instrumentality of business for private gain. The former is A COMMON RIGHT, the latter is an extraordinary use and the legislative power is plenary and extends even to absolute prohibition; Since the use of streets by a common carrier in the prosecution of its business as such is not a right, but a mere license of privilege." (Hadfield vs. Lundin, 98, Wash. 516 )

## Case Law in Support of Complaint

It has long been established that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." (Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)

"The right to travel is a well-established common right that does not owe its existence to the [federal] government. It is recognized by the courts as a natural right."( Schactman v. Dulles 96 App DC 287, 225 F2d 938, at 941.)

Kent v. Dulles, 357 US 116, 125: "The right to travel is a part of the liberty of which the citizen cannot be deprived without due process of law under the Fifth Amendment."

Notice: The Claimant's natural right and liberty to travel, was deprived by the Defendants, without due process of the law for even a minimal period of time, which constitutes irreparable injury for the Claimant.

(United States v. Guest 383 U.S. 745 (1966) "The Court found a correlative right of the citizen to move unimpeded throughout the land:  He has the right to come to the seat of government to assert any claim he may have upon that government.."

Williams v. Fears, 197 U.S. 207: "Undoubtedly, the right of locomotion, the right to remove from one place to another according to the inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of a state is a right secured by the Fourteenth Amendment and by other provisions of the constitution."

Ex Parte Dickey, (Dickey vs. Davis) 85 SE 781 "Every Citizen has an unalienable RIGHT to make use of the public highways of the state; every Citizen has full freedom to travel from place to place in the enjoyment of life and liberty."

People v. Nothaus, 147 Colo. 210. "No State government entity has the power to allow or deny passage on the highways, byways, nor waterways... transporting his vehicles and personal property for either recreation or business, but by being subject only to local regulation i.e., safety, caution, traffic lights, speed limits, etc. Travel is not a privilege requiring licensing, vehicle registration, or forced insurances."

"The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, includes the right to drive a horse drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business." (Thompson v.Smith, 154 SE 579, 11 American Jurisprudence, Constitutional Law, section 329, page 1135)

Caneisha Mills v. D.C. (2009): "The use of the automobile as a necessary adjunct to the earning of a livelihood in modern life requires us in the interest of realism to conclude that the RIGHT to use an automobile on the public highways partakes of the nature of a liberty within the meaning of the Constitutional guarantees. . ."

(Thompson vs. Smith, supra.; Teche Lines vs. Danforth, Miss., 12 S.2d 784) "... the right of the citizen to drive on a public street with freedom from police interference... is a fundamental constitutional right" -White, 97 Cal.App.3d.141, 158 Cal.Rptr. 562, 566-67 (1979) "citizens have a right to drive upon the public streets of the District of Columbia or any other city absent a constitutionally sound reason for limiting their access."

Berberian v. Lussier (1958) 139 A2d 869, 872, See also: Schecter v. Killingsworth, 380 P.2d 136, 140; 93 Ariz. 273 (1963). "The right to operate a motor vehicle [an automobile] upon the public streets and highways is not a mere privilege. It is a right of liberty, the enjoyment of which is protected by the guarantees of the federal and state constitutions."

Simeone v. Lindsay, 65 Atl. 778, 779; Hannigan v. Wright, 63 Atl. 234, 236. "The RIGHT of the citizen to DRIVE on the public street with <u>freedom from police interference</u>, unless he is engaged in suspicious conduct associated in some manner with <u>criminality</u> is a FUNDAMENTAL CONSTITUTIONAL RIGHT which must be protected by the courts."

People v. Horton 14 Cal. App. 3rd 667 (1971) "The right to make use of an automobile as a vehicle of travel long the highways of the state, is no longer an open question. The owners thereof have the same rights in the roads and streets as the drivers of horses or those riding a bicycle or traveling in some other vehicle."

"A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle." (Schlesinger v. City of Atlanta, 129 S.E. 861, 867, 161 Ga. 148, 159;)

"This Court long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement. If a law has 'no other purpose than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it is patently unconstitutional." (Shapiro v. Thompson 394 U.S. 618.)

"The use of the highways for the purpose of travel and transportation is not a mere privilege, but a common and fundamental Right of which the public and the individual cannot be rightfully deprived." (Barney vs. Board of Railroad Commissioners, 17 P.2d 82)

"We have held that there is <u>no such license as a driver's license known to our law</u>." (Claude D. Campbell v. State*, 160 Tex. Crim. 627; 274 S.W.2d 401.)

"An information charging the driving of a motor vehicle upon a public highway without a driver's license charges no offense<u>, as there is no such license as a driver's license known to the law</u>." (Keith Brooks v. State*, 158 Tex. Crim. 546; 258 S.W.2d 317)

"<u>...There is no such license as a driver's license known to our law</u>."(Hassell v. State, 149 Tex.Cr.R. 333, 194 S.W.2d 400; Holloway v. State, 155 Tex.Cr.R. 484, 237 S.W. 2d 303; and Brooks v. State, Tex.Cr.App., 258 S.W.2d 317.)

What is a <u>LICENSE:</u> "A permission, conferring the right to do some act which without such authorization would be illegal." (State v. Hipp, 38 Ohio St. 220; Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 054; Hubman v. State, 61 Ark. 4S2. 33 S. W. 843; Chicago v. Collins, 175 111. 445. 51 N. E. 907, 49 L. R. A. 40S, 67 L. R. A. 224.) <u>to carry on a trade</u> (Wheat. Int. Law, 447.)

"It is clear that a license relates to qualifications to engage in profession, business, <u>trade</u> or calling; thus when merely traveling without compensation or profit, outside of business enterpirse or adventure with the corporate state, no license is required of the natural individual traveling for personal business, pleasure and

**transportation."** (See Wingfield v. Fielder, (1972) 29 CA 3d. 213)

Therefore the Defendants knowingly, by threat and intimidation conspired to subject the Claimant to "ex post facto laws" which is a "law" that makes "illegal" an "act" that was "legal" when committed; whereas "traveling" without a "driver's license" is a "lawful" "act" when committed in which the Defendants imposed and subjected the Claimant to said ex post facto STATE statute so to deprive the Claimant of his liberty and impose a penalty upon the Claimant for an act that was innocent when done, as per; Ex post facto: "that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission." (Beazell v. Ohio, 269 U.S. 167 (1925)

The Claimant therefore has the right to get in his car [private property] and use the public roadways and highways, without any form of governmental permission or licensing and to travel where he wants, when he wants, and however long he wants. The Defendants can not interfere with his journey unless he commit a crime. Having no insurance, having no drivers license, having no inspection sticker, having no plates, and having an unregistered car is not in any way shape or form, a 'crime'.

### "Automobile stops are considered "Arrests," and must be accompanied by a warrant"

"Flashing lights, display of a weapon, or blocking of the suspect's path, the Court concluded, the police conduct would have communicated to the reasonable person an attempt to capture or otherwise intrude upon [one's] freedom of movement." (See Michigan v. Chesternut, 486 U.S. 567, 575 (1988).

"The temporary detention of individuals during an automobile stop by the police, even if only for a brief period, constitutes a "seizure of person" within the meaning of the Fourth Amendment. Therefore, an automobile stop is subject to the Constitutional requirement of the 4th Amendment." (Litzenberger v. Vanim, No. 01-5454, 2002 U.S. Dist. LEXIS 13843 (E.D. Pa. July 31, 2002) (citing Whren v. U.S., 517 U.S. 806, 809-10 (1996)

A "seizure" is when government interferes with an individual's possessions, property, rights or liberty.

The Court reasoned that the detention can be justified as "reasonable" because the government interests in crime prevention and officer safety outweigh the severity of the individual intrusion." (See Michigan v. Summers, 101 S. Ct. 2587 (1981)---In the Claimant's particular case, the Defendants did not have a warrant or probable cause to seize the Claimant, and the Defendants detention/seizure/stop/arrest of the Claimant was not "reasonable" because the "reason" for the stop was because the Defendants were "radioed" that the Claimant did not have a "driver's licenses," whereas said stop by the Defendants does not pass the "reasonable test" because pursuant of the Supreme Law of the Land, the Claimant is NOT required to possess a "drivers license" to exercise his freedom of movement, and because this was the reason for the Defendants stop, it was unreasonable because said stop was only to hinder and interfere with the Claimant's unalienable rights of freedom of movement under color of State statute and not because there was criminal activity or an actual government interest to prevent a crime. (See Prouse v. Delaware)

Thus pursuant of the Supreme Law of the Land, 4th Amendment; "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized;"...the Defendants unlawfully and "unreasonably" seized the Claimant for estimated 25 minutes.

"It is quite plain that the Fourth Amendment governs "seizures" of persons which do not eventuate in a trip of the station house and prosecution for crime----"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom ...[of movement], he has "seized" that person." (Terry, 392 U.S. at 16)

The Defendants furthermore stated on their "citation" that they "may issue a warrant for the Claimants' arrest for

failure to respond, pay, or appear for court, however, "arrests" must be in accordance with the common law, which the courts have long held that if there is no breach of the peace, or no felony committed by the common law, there can be no warrants issued or arrests made... "Even where police officers stop a moving vehicle for a brief detention, it is sufficient to constitute an arrest." (See Treatise on Arrests and False Arrest)

Thus, the liberty of all human beings which cannot be taken away without "due process of the law," includes..."liberty of movement."(Id. at 192-193.) "Due process" requires a "warrant" and "probable cause" to detain or arrest.

The problem is, that there are two different types of "law" being implemented and the people are being fraudulently deceived by the Defendants and mistaking the Defendants enforcement of traffic codes and statutes as being part of the "Law of the Land," whereas; "Statutes, codes or acts placed upon the books being labeled "laws" that are in contradiction to the true "law of the land" has no authority, and is null and void." See Calder v. Bull 3 Dall US 386, (1798) Wales v. Stetson 2 Mass. 145; Foster v. Essex bank 16, Mass. 245(1819) "Statutes which would deprive a citizen of the rights of person and property, without a regular trial according to the course and usage of the common law, would not be the "law of the land." (See Hoke v. Henderson, 15, N.C. 15, 25 AM Dec. 677)

The Defendants are Policy and Code Enforcers / Highwaymen, who also act as Mercenaries. The Claimant's Right To Travel upon the Land is not a 'policy', nor is it embodied in a code. It is a substantive 'Right of Birth', that cannot be abridged, licensed or liened upon, thus "unalienable and inalienable." The Claimant is the Traveler, whom was NOT doing commerce, thus was not a "driver" by legal definition. It seems minuscule, however it is the truth of fact. The Defendant's actions are nothing more then a show of unconstitutional, arbitrary invasion of the Claimant's privacy and hindrance of rights implementing a tyrannical form of government which is the antithesis of the "guaranteed Republic" founded within the Constitution for the United States of America; ARTICLE IV, SECTION 4, in which --"The United States [*Federal Government/Courts*] shall guarantee to every State [*peoples*] in this Union a Republican Form of Government,[*individual man's rights protected from the majority of the people/government*] and shall protect each of them against Invasion [*of rights*]; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened), against domestic Violence [*abuse of authority from domestic police officers*]; The Guarantee Clause's protection against domestic violence assures orderly government and the rule of law, and protects the states' legitimate magistracy against mob rule.

Where is the safety in a man's liberty if they are to be subject to every statute or ordinance or law that the legislative or bodies may choose to enact? Or if the law on arrests/seizures can be changed by statutes? By the "due process" clause, the common law governs what the law on arrest is in this land. If there is no direct language in the Constitution directing what procedure or process is to be followed, the common law is to be the due process of law followed, not a legislative statute or city ordinance. Officers who do not abide by this law are trespassers and are guilty of false imprisonment or attempted false imprisonment. (See Treatise on Arrests and False Arrest.), Therefore the Claimant is entitled to recover damages for what the Defendants wrongfully did. (See Murphy v. Countiss, 1 Harr. (Del) 143. "The arrest being wrongful, the Defendant is liable for all the injurious consequences to the Claimant which resulted directly from the wrongful acts." (See Mandeville v. Guernsey, 51 Barb. (N.Y.) 99.)

"Under our system of law, we have repeatedly decided, in accordance with constitutional principles as construed everywhere, that no arrest can be made without warrant, except in cases of felony by common law definition, or in cases of breaches of the peace committed in the presence of the arresting officer. This exception, in cases of breaches of the peace, has only been allowed by reason of the immediate danger to the safety of the community against crimes of violence." (See Yerks v. Smith, 157, Mich. 557, 122, N.W. 223, 224, (1909) citing: Robison v. Miner, 68 Mich. 549, 557-58, 37, N.W. 221, 25. (1888)

The MOWER COUNTY SHERIFF OFFICER JIM LAMECKER conspired in collusion with the AUSTIN

POLICE DEPARTMENT Officers listed above to hinder, stop, detain, seize, arrest, threaten and intimidate the Claimant that if he continues to exercise and enjoy his right to travel/freedom of movement upon the roadways in his private automobile without a "drivers license," that the Defendants will arrest him, in violation of the common law and constitutional principles, whereas not having a drivers license is not a breach of the peace or a felony. Furthermore the Defendants conspired to **"frame"** the Claimant for a "crime" that is not a "crime" while using intimidating tactics to extort monies from the Claimant or face arrest.

In DELAWARE V. PROUSE, The United States Supreme Court first addressed the constitutionality of "license spot checks" in Delaware v. Prouse. In that case, a Delaware police officer had stopped an automobile occupied by Prouse <u>for the sole purpose of conducting a "license and registration check."</u> The officer <u>"had observed neither traffic or equipment violations nor any suspicious activity"</u> (as did in the Claimants' particular case) on the part of the vehicle's occupants. the Delaware Supreme Court agreed with the trial court's ruling, holding that <u>"for a police officer randomly to stop an automobile "solely for the purpose of a document check" is an unreasonable and unconstitutional detention of those in the stopped vehicle." **The United States Supreme Court affirmed**</u>. The Court first determined that stopping an automobile and its passengers, **even for a brief period of time and only to check license and registration, constitutes a seizure within the meaning of the fourth amendment.** Thus, the validity of the particular police action in question rested on a balancing of the fourth amendment intrusion involved against the promotion of legitimate government interests achieved by that action. In applying this balancing test to the specific activity involved, **the Court held that license checks constitute a substantial physical and psychological intrusion on motorists' fourth amendment interests. License check stops "generally entail law enforcement officers signaling a moving automobile to pull over to the side of the roadway, by means of a possibly unsettling show of authority." They "interfere with freedom of movement, are inconvenient, . . . consume time. . . [and] may create substantial anxiety."** ( Delaware v. Prouse, 440 U.S. 648)

In assessing "reasonableness," the Court stated that "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search, warrant a man of reasonable caution in the belief' that the action taken was appropriate?" The Court stressed that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Terry v. Ohio)

As confirmed in the above case of Delaware v. Prouse, the "facts" available to the Defendants at the moment of the seizure of the Claimant, did not warrant the action taken to be appropriate in justifying the particular intrusion of the Defendants to reasonably warrant said intrusion.

### Personal Liberty:

**The "right to travel" aka "freedom of movement" aka "right of free ingress and regress" is not a "myth" or a "frivolous claim" the people of this country have just become ignorant of their true rights by fraudulent actions by public servants like the Defendants and statutes passed by "legislatures" who have ulterior motives to make money for the STATE, not to "protect people's rights" as the Defendants actions express.**

<u>Personal liberty</u>, or the Right to enjoyment of life and liberty, is one of the fundamental or natural Rights, which has been protected by its inclusion as a guarantee in the various constitutions, which is not derived from, or dependent on, the U.S. Constitution, which may not be submitted to a vote and may not depend on the outcome of an election. It is one of the most sacred and valuable Rights, as sacred as the Right to private property ... and is regarded as inalienable. (C.J.S., Constitutional Law, Sect.202, p.987)

The infraction of **personal liberty** has ever been regarded as one of the greatest personal injuries. The injuries to personal liberty are malicious prosecutions or arrests, and false imprisonment. (John Bouviers Institutes of American Law excerpt from #2275 page # 613.)

**Personal Liberty** consist in the **power of locomotion**, of changing situation, of removing one's person to whatever place **ones inclination** may direct **without restraint** or **imprisonment ...This right is protected by law.** (John Bouviers Institutes of American Law excerpt from #208 Chapter 3 page 51)

"At the common law an officer has no authority to make an arrest/seizure for a misdemeanor though committed in his presence "unless it involved a breach of the peace." The right of **personal liberty** is a very high prerogative right, and to deprive one of that right, without due process of the law, we must find specific authority for doing so. It can not be left to inference or some strained construction of statute or ordinance." (See State v. Lutz, 85 W. Va. 330; 101 S.E. 434, 43 (1919).

The great English jurist, Sir William Blackstone (1723-1780), argued in his Commentaries on the Laws of England (1753) that one of the key "absolute rights of individuals" was the right to the preservation of one's **personal liberty**. Following from this principle he further argued that to "secretly hurry" a man to prison is a "dangerous engine of arbitrary government." (1753) **Next to personal security, the law regards, asserts, and preserves the personal liberty of individuals. This personal liberty consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due course of law. Concerning which we may make the same observations as upon the preceding 'article,' that it is a right strictly natural;**

**Article IV of the Articles of Confederation**, one of the Organic Laws of the United States of America, where the right of interstate travel is plausibly inferred from states "the people of each state should have **free** ingress and regress to and from any other state."

"**Free**" means: Unconstrained; having power to follow the dictates of his own will. Not subject to the dominion of another. Not compelled to involuntary servitude; Enjoying full **civic rights**; Available to all citizens alike **without charge ; Available for public use without charge or toll; Not despotic; assuring liberty; defending individual rights against encroachment by any person or class; instituted by a free people.**

 "**Civic Rights:**" rights that protect individuals freedom from infringement by governments.

The Right to Travel; the Right to Mode of Conveyance; The Right to Locomotion are all absolute rights, and **the police cannot make void the exercise of Rights.** (See State v. Armstead. 60 s 78, and 781.)

"The Right of a citizen to Travel upon the public highways and to transport one's property thereon, either by carriage or automobile, **is not a mere privilege which a city may prohibit or permit at will but a common right which he / she has under the right to life, liberty, and the pursuit of happiness."** (Thompson v. Smith 154SE 579)

The Claimant's "right to free ingress and regress," travel, and freedom of movement is protected by the "organic laws" of the United States America, pursuant of the Declaration of Independence, Articles of Confederation, Constitution for the United States of America 1st, 4th, 5th, and 9th Amendments, in which the Defendants clearly violated without probable cause or reason, under color of authority and color of state statute and conspired to convert the Claimant's liberty secured by the Constitution, into a "privilege," "license it, and attach a fee to it," as per;

**No state shall convert a liberty into a privilege, license it, and attach a fee to it."** (See Murdock v. Penn., 319 US 105)

By the Defendants threatening to arrest the Claimant if he continued to travel in his automobile and attempting to stop the Claimant from further "engaging in the right with impunity," is indeed "converting a liberty into a privilege" as per;

**"If the state converts a liberty into a privilege, the citizen can engage in the right with impunity."** (Shuttlesworth v. Birmingham, 373 US 262)

**"Traffic infractions are not a crime."**(People v. Battle, 50 Cal. App. 3,step 1, 123 Cal.Rptr. 636,639.)

Thus, if "traffic "infractions are NOT A CRIME, then there is NO PROBABLE CAUSE TO ARREST, OR EVEN STOP THE CLAIMANT WITHOUT A WARRANT, OR "ISSUE A WARRANT FOR THE CLAIMANT'S ARREST," AND NO REASON TO THREATEN THE CLAIMANT WITH A WARRANT FOR HIS ARREST ON THE CITATION IF HE FAILED TO PAY OR APPEAR IN COURT, BECAUSE THE MATTER WOULD BE A "CIVIL" MATTER, AND THERE IS "NO PROBABLE CAUSE TO ARREST OR THREATEN A WARRANT FOR ARREST IN A "CIVIL MATTER" AS PER; "Civil disputes cannot give rise to probable cause," (Allen v. City of Portland, 73, F.3d, 232, 237, (9th Cir. 1995), "Namely that "good intentions" do not overcome the law that civil disputes do not give officers probable cause to arrest." (See Wooley v. City of Baton Rouge, 211, F. 3d. 913, 925-27 5th Cir. 2000).

The ONLY other "jurisdiction" in which the Defendants would have authority to arrest for a "civil matter" would be under the "admiralty jurisdiction," which is defined as "civil, with criminal sanctions for violations of the provisions of the contract," however this only applies to military personal, corporations, and government employees whom are subject to their oaths of office under compelled performance, the Claimant is neither of these and remains under the protection of the Supreme Law of the Land and common law jurisdiction.

The Defendants are using "paper terrorism" and implementing "a state of being terrified, or a state impressing terror" upon the Claimant by their threats of arrest for exercising his rights and are acting as "sovereign citizens" which by definition are "terrorists" which by definition is "A GOVERNMENT BY INTIMIDATION," to intimidate the Claimant from the enjoyment and exercise of his rights secured by the Constitution and attempting to extort money from the Claimant for exercising and enjoying his rights secured by the Constitution as per the "citation" using threatening and coercive words such as "A WARRANT MAY BE ISSUED FOR YOUR ARREST."

The Fourth Amendment "is not  an adjunct to the ascertainment of truth." The guarantees of the Fourth Amendment stand "as a protection of quite different constitutional values "values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect." (Tehan v. United States ex rel. Shott, 382 U. S. 406, 416.  Schneckloth v. Bustamonte, 412 US 218, 242 (1973).

"Officer(s) cannot swear an oath in his own mind he has to swear to the complaint in front of a proper party to attest to the swearing, i.e. **signing /issueing a ticket and giving it to you on the street doesn't get it anymore."** (City of Cedar Rapids, Iowa vs. Atsinger, 617 NW 2d 272, 9-7-2000. (Iowa Supreme Court)

**"With no injured party, a complaint is invalid on its face."** ( Gibson v. Boyle, 139 Ariz. 512) Thus, the fact that the Claimant caused no "injury" to another human being before the Defendant's seizure/arrest of the Claimant, (except the Defendant's causing injury to the Claimant), the issuing of the "citation" by the Defendants, for the Claimant, which is "Titled" "Driving Complaint" in the AUSTIN POLICE DEPARTMENT'S "Incident Report," is a fraudulent complaint, and not "sworn under penalty of perjury" which therefore the Defendant's created a "counterfeit complaint" so to  "bear false witness" against the Claimant and attempt to conspire to "frame" the Claimant for a "crime" although the Claimant committed no crime at all, which resulted in the deprivation of his freedom of movement, the imposition of paying a fine, and be threatened with arrest, however **"there can be no sanction or penalty imposed upon on because of his exercise of a Constitutional right."** (See Sherar v. Cullen 481, F. 2d, 946, (1973)

 The Defendants have violated the following pursuant of Public Law 97-280 (Exodus 20:16) Thou shalt not bear false witness against thy neighbor; Do not to violate an oath or swear falsely (Lev. 19:12) Do not rob by violence (Lev. 19:13) Do not defraud (Lev. 19:13).

Traffic infractions are a "civil matter," with criminal penalties attached to them, which can only be lawfully applied to corporations engaged in commerce upon the roadways and government employees under compelled performance contracts and are enforced by the Defendants under the "admiralty-maritime jurisdiction," and the Claimant, being a man, one of the people, not a "person" engaged in commercial activities owes no duty to the State nor does the Claimant have a contract of compelled performance with the Defendants or the State that can legally bind or compel the Claimant to pay any fine or fee by threats of arrest for failure to pay.

The type of acts and actions by the Defendants are the very things that the people of America, in "The Declaration of Rights" of 1765 and 1774  declared unlawful as per;

8th Article of 1765 Declaration: "Imposing taxes on the inhabitants of these states, by extending the jurisdiction of the courts of admiralty beyond its ancient limits, have a manifest tendency to subvert the rights and liberties of the people."

Declaration of Rights of 1774: Whereas the government claiming an erroneous power of right to bind the people of America by statute, in all cases whatsoever, hath expressly imposed taxes [fines, fees] under various pretenses, but in fact for the purpose of raising revenue, hath established a board of commissioners [tax agents, traffic courts, police] with unconstitutional powers, and extended the jurisdiction of courts of admiralty [traffic courts]. We find many infringements and violations of the foregoing rights, which demonstrate a system formed to enslave America."

The terms admiralty and maritime are virtually synonymous (2 Gall. R. 468 Blacks 6th ed)

"Maritime causes are those arising from maritime contracts, whether made at sea or on land, that is, such as relate to the commerce, business or navigation of the sea. (Bouvier's 1856 ed.)

As long ago as 1851 the Supreme Court  recognized the extending of the jurisdiction of admiralty and maritime causes to the land "under the commerce clause" and depriving the people of the right of a trial by jury. -"This power of admiralty jurisdiction is as extensive upon land as upon water. And if the admiralty jurisdiction, in matters of contract and tort which the courts of the United States may lawfully exercise on the high seas, can be extended to the lakes under the power to regulate commerce, it can with the same propriety and upon the same construction, be extended to contracts and torts on land when the commerce is between different States. And it may embrace also the vehicles and persons engaged in carrying it on. It would be in the power of Congress to confer admiralty jurisdiction upon its courts, over the cars engaged in transporting passengers or merchandise from one State to another, and over the persons engaged in conducting them, and deny to the parties the trial by jury. Now the judicial power in cases of admiralty and maritime jurisdiction, has never been supposed to extend to contracts made on land and to be executed on land. But if the power of regulating commerce can be made the foundation of jurisdiction in its courts, and a new and extended admiralty jurisdiction beyond its hertofore known and admitted limits, may be created on water under that authority, the same reason would justify the same exercise of power on land. (Propeller Genessee Chief et. al. v. Fitzhugh et al. 12 How. 4443, (U.S. 1851)

"Next to revenue (taxes) itself, the late extensions of the jurisdiction of the admiralty are our greatest grievance. The American courts of Admiralty seem to be forming by degrees into a system that is to overturn our Constitution and to deprive us of our best inheritance, the Laws of the Land. It would be thought in England a dangerous innovation if the trial, of any matter on land, was given to the admiralty. (Jackson v. Magnolia, 20 How. 296 315, 342, (U.S. 1852)

Clearly the Defendants have subjected the Claimant, under threat, duress and coercion to a state of forced and compelled performance and association under a jurisdiction that the Claimant is not subject to and conspired and did deprive the Claimant of his liberty to be free from unlawful interference of his freedom of movement without government or private person interference, and intimidated the Claimant unlawfully with the threat of arrest for continuing to exercise said freedom, and extorted the Claimant for exercising his rights which the Defendants converted said right into a crime, framed the Claimant, bearing false witness against the Claimant,

infringed upon the Claimant's rights, while working in collusion together using paper terrorism to place fear in the Claimant to hinder him from continuing to exercise his rights.

The Defendants have knowingly, willingly and with full awareness fraudulently concealed the "true nature and cause" of the alleged crime they charged the Claimant with and what jurisdiction they are operating under as per;

"The constitutional right to be informed of the nature and cause of the accusations entitles the defendant to insist that the indictment [charge]apprise him of the crime charged with such reasonable certainty that he can make his defense and protect himself after judgment against another prosecution on the same charge." (United States v. Cruikshank, 92, U.S. 542, 544, 558, (1876) United States v. Simmons, 96 U.S. 360 (1878)

"No indictment is sufficient if it does not allege all of the ingredients that constitute a "crime." (Potter v. United States, 155, U.S. 438, 444 (1894).

The 6th Amendment makes this right to know the nature and cause mandatory, in which the Defendants willfully and fraudulently neglected to do so.

"The right to notice of accusation is so fundamental a part of procedural due process, that the States are required to observe it." [This includes disclosure of the jurisdiction under which the Defendants are operating under] (In re Oliver, 333, U.S. 257, 273, (1948) Cole v. Arkansas, 333 U.S. 196, 201 (1948)

"Knowing failure to disclose material information necessary to prevent statement from being misleading, or making representation despite knowledge that it has no reasonable basis in fact, are actionable as fraud under State law. (Rubinstein v. Collins, 20, F. 3d. 160, 1990)

"Party in interest may become liable for fraud by mere silent acquiescence and partaking of benefits of fraud. (Bransom v. Standard Hardware, Inc, 874, S.W. 2d. 919, 1994)

## Probable cause means that a "crime" has been committed:

The Fourth Amendment prohibits a police officer from arresting a person without **probable cause**. (Paff v. Kaletenbach, 204 F.3d 425, 435 (3d Cir. 2000). (Automobile stops are considered an "arrest.")

**Probable Cause:** sufficient reason based upon known facts to believe a **crime** has been committed or that certain property is connected with a crime. Probable cause must exist for a law enforcement officer to make an arrest without a warrant, search without a warrant, or seize property or persons in the belief the items or persons were evidence of a crime. Technically, probable cause has to exist prior to arrest, search or seizure.

"The courts are not bound by an officers interpretation of the law **under which he presumes to act."**(Hoffsomer v. Hayes, 92 Okla 32, 227 F. 417)

**"Crime:" An act that causes harm to an individual or a community. An act that causes injury to a person or property.** (Traveling without a drivers license is not an "act" that causes harm to another.)

The Defendants committed a "crime" by a "breach and violation of a public right and duty due to a whole community;" (See Blacks Law 2nd Ed). The Defendants owe a "duty" to the Claimant not to breach or violation the Claimant's personal liberties absent of any evidence that the Claimant caused harm or damage to another, and also the Defendants owe a duty to the whole community to not violate, restrain, seize or arrest any of the people without probable cause that a crime has been committed, nor threaten and intimidate them for not purchasing a "drivers license card" from a private business and compel the Claimant or the people to pay a fine for not purchasing a plastic card called a drivers license.

The Drivers License is an instrument for those who are hired to 'drive', to carry cargo, goods and passengers in commerce for compensation and all the regulations and statutes therein are for the same. It is not for those who are Traveling. We know that "Highway Men' are defined as those who go out on the highway and accost Travelers. This cannot be made any clearer. You might want to read USC Title 49, which is the Federal Department of Transportation Drivers program and defines the rules for 'drivers', of which the States were allowed to participate in and administer, however when they (States) contracted out to the municipalities who have policy enforcers (not police officers), they began raping the people and falsifying reports to the Federal Department of Transportation. This being done so they could continue to get the Federal finance to continue to administer the program. In other words, since they knew the people were generally getting educated in their municipal school institutions, they excluded the facts in regards to the drivers license instrument and they taught the people in the schools that they HAD TO HAVE a license instrument in order to Travel. There goes generation after generation of mis-informed people. This does not mean that one ought not know how to operate any vehicle or conveyance, nor does it mean they ought not learn safety when traveling or navigating on the roads. It means you ought not be exploited, nor put under threat, duress, or coercion in order to travel upon the roads and highways, as it is a substantive right / liberty. It also translates to this question: How else will municipalities make finances to feed their families, if they cannot exploit you and yours?

"Driving" is a COMMERCIAL ACTIVITY and the "license instrument" is for "DRIVERS ONLY" -- for commerce,-- however, going to the store, to visit a friend, traveling from place to place in private affairs etc., IS NOT COMMERCIAL ACTIVITY. As a natural and substantive right, the Claimant has the right to Travel/freedom of movement in his private automobile upon the land without license, registration, tags, insurance, etc. Of course, the Claimant only owes the public 'due care', and must remedy any injury made to another or another's property. However to be exploited and violated in a manner that causes unnecessary hindrance, consumption of the Claimant's time, intimidation and injury via stealing or conspiring to convert the Claimant's Rights and property, including the Claimant's body being imprisoned, or rather kidnapped, is a violation of the Claimant's rights secured by the Constitution. To send 'Revenue Collectors' on the highway, feigning as police officers, when they are private police enforcers carrying guns and enforcing 'policies', and are breaking the law themselves, which prove they are not 'law enforcers', is an issue for this court and a trial by jury to decide. For those who think they MUST have a DMV teach the people 'due care', we suggest you re-think that, and recognize that the people can learn to operate a conveyance, be it an automobile, a truck, a tractor, etc., without the exploitation of a private corporation for profit called the DMV, feigning as a government entity. In fact the 'permit' is sufficient, unless it has adhesion's that place the Claimant or the people in a state's admiralty jurisdiction that operates under Color-of-Authority and with the intent to exploit the Law, in which is exactly what the Defendants are doing.

United States v. Wheeler, 254 U.S. 281 (1920) In all the states, from the beginning down to the establishment of the Articles of Confederation, the citizens possessed the right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective states, **to move at will from place to place therein, and to have free ingress thereto and egress therefrom. A consequent authority resided in the states to forbid and punish violations of this right."**

**"There can be no sanction or penalty imposed upon one because of the exercise of a constitutional right.**"(Sherar v. Cullen, 481 F. 945 (9th Cir. 1973) Spevack v. Klein, 385 U.S. 511 (1967) GARRITY v. NEW JERSEY, 385 U.S. 493 (1967) BOYD v. U S, 116 U.S. 616 (1886) MALLOY v. HOGAN, 378 U.S. 1 (1964)

Per the United States "Republic" Declaration of Independence: ". . . to secure these **Rights**, Governments are instituted among Men, deriving their just Powers from the Consent of the Governed " meaning that in a "Republic" the individual man's (Claimant) rights are protected from the majority, meaning if the "majority of the people" want to "consent to be governed" by the government, they give the government the power to govern them, but the Claimant has the reserved right to travel and move freely pursuant to the 9th Amendment, which declares the people's reserved right not to consent to be governed by State statutes or participate and associate with private businesses such as the DMV.

"The constitution is the mandate of the sovereign people to its "servants" and representatives. Not one of them has the right to ignore or disregard these mandates." (John F. Jelko Co. v. Emery, 193, Wisc. 311; 214 N.W. 369, 53, A.L.R. 463; Lemon v. Langlin, 45, Wash. 2d. 82, 273 P. 2d. 464.)

"A constitution is designated as a supreme enactment, a fundamental act of legislation by the people of the state. A constitution is legislation direct from the people acting in their sovereign capacity, while a "statute" is legislation from their representatives, subject to limitations prescribed by the superior authority." (Ellingham v. Dye, 178 Ind. 336; NE 1; 231 U.S. 250; 58 L. Ed. 206; 34 S. Ct. 92)

"A state cannot impose restrictions on the acceptance of a license that will deprive the licensee of his constitutional rights." (Ruckenbrod v. Mullins, 102 Utah 548, 133 P.2d. 325, 144 ALR 839)

The 'Highest Court' in the Land (possessing Original Jurisdiction) has ruled that "No State can make any laws or rules that abrogate the Peoples' Rights or the Supreme Law of the Land". However, due to extreme levels of debauchery, misprision and fraud permeating all levels of government, by dishonest politicians, judges, prosecutors, and police officers, the Natural People have been consistently robbed and suffer the destructive results of abuse of authority. Criminals wearing a badge, black robes and faking as "peace officers" and "Article III judicial judges," have created and acted as auctioneers, administering a system of deception that has led many unsuspecting Natural People into "believing" that they (the accused) have violated the Law, when in fact they have not. The thieves and criminal officers of the Defendants and municipals corporations all over the land, have converted Rights, secured and reserved for the People, into crimes. Thereafter, fining, arresting, and jailing them, under a 'Color of Law' and a 'Color of Authority'. Color means, "A an appearance, a semblance, or simulacrum, as distinguished from that which is real". Color: Fake, Imitation, Misrepresentation, and Fraud are synonyms.

The Defendants acting as thieves have, by outright criminality, taken unlawful leave and advantages of the usurped seats of government, and have polluted the sanctity of their Official Oaths to uphold the Constitution and Treaties and are unlawfully violating the Natural People (Claimant). Consequently, much of the ignorance (plaguing and stagnating the Natural People) has more to do with deliberate misguidance, misprision, falsehoods, and miseducation. This is due to a designed lack of knowledge, deviously promoted and controlled by these same miscreants. Pseudo-government operatives, (administrative) have knowingly, and with forethought, often substituted themselves for true "officers" sanctioned authorities. Organized criminal controllers of these misrepresented seats or offices of authority, have made and generated incalculable amounts of finance for unchecked municipal racketeers.

The Defendants are involved in criminal Racketeering: which is a law term that applies to an organized conspiracy to commit the crimes of extortion or coercion, or attempts to commit extortion or coercion. Racketeering is the obtaining of money or property from another, without his consent, induced by the wrongful use of force or fear. The fear which constitutes the legally necessary element in extortion is induced by oral or written threats to do an unlawful injury to the property of the threatened person by means to kill, kidnap, or injure him or her, or a relative of his or her family, etc.

It must be clearly understood by all that the States' "drivers license instruments" are a 'Corporate Use Tax" relegated to foreign/domestic corporate privileges, and are 'Customs Payments' made to the government, and deemed for "commercial usage and privilege." When Natural people (The Claimant) is/are operating his/their own private vehicles, conveyances, automobiles, or vessels, unless they are corporately carrying passengers for hire, or transporting cargo or property for profit, they are not "driving"; they are "traveling". Driving pertains to commercial activities. Traveling the public roadways and highways are natural and Substantive Rights; having nothing to do with "privileges." This clear distinction between the words, "driving" and "traveling" may seem to be trivial to some readers, however, that specificity has caused many to lose a substantial amount of freedoms and finance we see today.

If the natural people are operating with the States' imposed "drivers license instrument," and had a "Surcharge" imposed, know that the contract - instrument is essentially a surcharge for "being stopped" from exercising a right.  Surcharges are compound or secondary fees or fines, levied against one for 'Driving' and are typically spread over monthly extortion - payments for a few years or so.  The ministerially - adjudicated 'Surcharges' are usually paid (under threat of warrant or arrest) to a different entity, person, and address other than the State-contracted Department of Motor Vehicles (DMV).  Such acts are actually active and constructive fraud, and are no more than collusive acts of Conspiracy.  If the Natural People (Claimant) or citizen fails to pay the 'Surcharges' (ransoms) in the time or manner they ( Defendants/employees of the Agencies / Municipalities) have set, or imposed, they then notify the DMV to suspend the States' imposed license, which is rented annually for a fee. Such an action instituted against anyone, must be relegated to conspiracy to extort.

The Corporate Municipal Agents of the DMV et. al., also notify the local courts, police officers, townships, cities, court systems, etc., to take unwarranted legal—process actions against you (the accused violator).  The usurping State, (through its hired thieves such as the Defendants) thusly uses "color-of Law" and "Color of Authority" to hinder the (Claimant) Natural People and Citizens from traveling the public roadways and highways. This deduces the use of the driver's license to an instrument used to effectuate and veil organized theft and extortion. The thieves then conspire to systematically serve the alleged violator with new Tickets / Suits / Bills of Exchange / Summons, to appear or pay, or both. The colluders often threaten to, again, suspend the States' License and may also impose possible jail time.  All of these administrative acts are unlawful.

"...It is an axiom in political science, that unless a people are educated and enlightened, it is idle to expect the continuance of civil liberty, or the capacity for self government." (Quoting the Texas Declaration of Independence of March 2, 1836)

Ignorance of the law does not excuse misconduct in anyone, least of all in a sworn officer of the law."( In re McCowan (1917), 177 C. 93, 170 P. 1100.)

The Defendants conspired in collusion to "frame" the Claimant as per; **"FRAME:"** "to make someone seem guilty of a **crime** when they are not, for example by lying, or by producing false evidence."

One who interferes with another's liberty of locomotion does so at his own peril. All who do so without lawful authority can be sued for the trespass upon liberty and loss of time. It thus is a very serious thing to deprive a person of their liberty .Unlawful interference with or injuries to the liberty of a citizen is a violation of his natural, inherent and absolute rights, which damage results as a legal consequence. (Treatise on False Arrest)

The Defendants made said stop, seizure, arrest, restraint, and hindrance of the Claimant and his automobile in violation of the 4th Amendment, whereas if the Defendants were made aware that the Claimant was allegedly committing this non existent crime of "driving after cancellation" said stop, seizure, arrest and restraint of the Claimant should of been accompanied by a warrant as stipulated in the Law of the Land pursuant of the 4th Amendment as per; Justice Carpenter of the Supreme Court of Michigan "the law governing this case is elementary, except for a breach of the peace committed in his presence, or a felony, a police officer has no authority to arrest without a warrant."

In Ekern v. McGovern, 154 Wis. 157, 142 N.W. 595, 620 (1913). Thus the mode of arrest by which one can be deprived of his liberty is to be determined by the per-existing common law principles and modes of procedure. A properly constituted warrant of arrest is a process at common law by which persons could lawfully be deprived of their liberty."

In Exparte Rhodes, 202 Ala. 68, 79 So. 462, 464 (1918), the Supreme Court of Alabama related the due process provision to the act of arrests. It asserted that, "**any seizure or arrest** of a citizen is not reasonable, or 'due process; merely because a Legislature has attempted to authorize it. These phrases are limitations upon the power of the Legislature, as well as upon that of the other departments of government, or their officers." In determining what was 'due process' regarding arrests the Court stated: "It must not be forgotten that there can be

no arrest without due process of law. <u>An arrest without warrant has never been lawful</u>, except in those cases where the public security requires it; and this has only been recognized in felony , and in breaches of the peace committed in the presence of the officer." (Ex parte Rhodes. 202 Ala. 68, 79 So. 462,465; ciling, Sarah Way's Case, 41 Mich. 304, I N.W. 1023 (1879), et al. Also cited and affirmed in Pinkerton v. Verberg. 78 Mich. 573, 44 N.W. 579, 583 (1889); State v. Williams. 45 Ore. 314, 77 Pac. 965, 969, (1904); Adair v. Williams. 24 Ariz. 422, 210 Pac. 853, 856 (1922).

In American Jurisprudence, 2d., Vol. 5, under the subject of "Arrest," sections 26 and 28, pp. 716, 718, it states: At common law. a peace officer cannot arrest without warrant for a misdemeanor, although committed in his presence, unless a breach of peace is involved.

Therefore, the Defendants "arrest" of the Claimant needed to be by a warrant, or witness the Claimant commit a breach of the peace or felony act in their presence in order to detain and seize the Claimant, because the misdemeanor "driving after cancellation" was not a breach of the peace or felony as described above and although committed in the Defendants presence, did not breach the peace.

However, said "misdemeanor" of "driving after cancellation" is a "commercial crime" that only applies to those "driving" and operating in commerce and thus is a contractual provision in which the Claimant has no contract of compelled performance with the State or Defendants to be compelled to purchase said license and does not constitute a "breach of the peace" or "felony" and therefore said "arrest" and "seizure" of the Claimant by the Defendant's was unlawful and outside of the Defendants jurisdiction.

 The right thus to arrest/seize without a warrant must be confined to the cases of strict public necessity. The cases are few in number, and may be stated as follows:

l. When a felony is being committed, an arrest may be made without warrant to

prevent any further violation of the law.

2. When the felony has been committed, and the officer or private individual is

justified, by the facts within his knowledge, in believing that the person arrested has

committed the crime.

3. All breaches of the peace, in assaults and batteries, affrays, rims, riots etc., for the

purpose of restoring order immediately.

"At the common law an officer has no authority to make an arrest/seizure for a misdemeanor though committed in his presence unless it involved a breach of the peace. (State v. Lutz, 85 W.Va. 330; 101 S.E. 434, 43 (1919).


The specific authority for arrests/seizures is grounded in the ancient settled maxims of law, which no statute can abrogate without violating the 'due process of law' provision of the constitution. <u>**Thus a warrant must be obtained for a misdemeanor that is not a 'breach of peace**</u>.' The Supreme Court of Minnesota has stated on several occasions that even in the case of a felony an "arrest and search should not be made without a warrant unless there is a compelling necessity to do so." (State v. Mastrian, 285 Minn. 51, 57 (1969).

The supreme Court of Rhode Island in declaring the requirements at common law for an arrest stated: "The law permitted an officer to arrest without a warrant on reasonable suspicion based on his knowledge that a felony had been committed .••• <u>In all other cases, except in the case of a misdemeanor amounting to a breach of the peace committed in his presence, an officer had no authority, at common law, to arrest without a warrant."</u> (authorities cited) Kominsky v. Durand. 64 R.J 387, 12 Atl.2d 652, 654 (1940).

<u>In Corpus Juris Secundum, Vol. 6A, under the subject of "Arrest," and under the heading of "Arrest or Detention</u>

Without Warrant" § 10, p. 17, it is written: At common law, however, it has always been the rule that, except in cases where the public security has demanded it, arrest without a warrant is deemed to be unlawful. **"Due process of law," which declares that no citizen shall be deprived of any of his rights of life, liberty or property, unless by the law of the land, or the judgment of his peers** (Minn. Const., Art. I, Sec. 2 & 7; U.S. Const. 4th & 5th Amendment), is the controlling factor in the matter of the arrest/seizure/restraint/deprivation made by the Defendants. An arrest is a deprivation of one's liberty and the due process that must be followed in an arrest is that process which existed at common law. To prevent the exercise of arbitrary power at the discretion of government, it was deemed wise to secure the principles already settled in the common law upon this vital point of civil liberty in written constitutions (Cooley, Const. Lim. 364 and notes).

The Defendants invaded the Claimant's privacy and violated the Claimant's right to be left alone as per; "The right to be let alone — the most comprehensive of rights, and the right most valued by civilized people."–Louis Brandeis, (Olmstead v. United States.)

The Minnesota Supreme Court has held that even to subject large numbers of people to searches [DWI checks] without suspicion that they have done anything wrong is too great an intrusion into the people's right to be left alone."

Minnesota Supreme Court held in 1997, "very fewer drivers can traverse any appreciable distance "without violating some traffic regulation."

"As a rule, fundamental limitations of regulations under the police power are found in the spirit of the Constitutions, not in the letter, although they are just as efficient as if expressed in the clearest language." (Mehlos vs. Milwaukee, 146 NW 882)

Said unlawful seizure, arrest, restraint, detention of the Claimant's liberty without warrant or lawful cause by the Defendants caused the Claimant many damages, including, great physical inconvenience, emotional trauma, discomfort, loss of time, mental suffering, attempted injury to reputation, distress, anguish, anxiety and humiliation of mind.

The facts being, the Defendant's deprived the Claimant of his freedom of movement, without probable cause that a "crime" was committed, whereas "traveling without a "driver's license" is not a "crime" and thus not probable cause to seize the Claimant and threaten and intimidate the Claimant with arrest if he continued to exercise his right to freedom of movement in his private automobile, nor a cause of action to issue a citation because the Claimant was not "driving" a "motor vehicle for hire" or operating in commerce under a contract of compelled performance and subject to State statutes, thus the Defendants acted under color of state statutes, custom and usage to deprive the Claimant of his rights secured by the Constitution.

### NOTRE DAME LAW REVIEW Scope of Police Powers

**Inherent rights" or"natural rights"** is used as a kind of synonym for **"liberties"** or Liberty, as distinct from license. natural rights define a private domain within which persons may do as they please, provided their conduct does not encroach upon the rightful domain of others. As long as their actions remain within this rightful domain, other persons including persons calling themselves government officials-should not interfere without a compelling justification (compelling justification would mean an actual crime has been committed, not a "legislative corporate statute" allegedly violated.)

When the opponents of the Constitution objected to the absence of a bill of rights, the Federalists argued that this additional protection was unnecessary because the "Congress was not given any power to violate the rights retained by the people."

As soon as any particular rights or liberties were explicitly enumerated, the status of those left out of the enumeration became unclear. Were only the enumerated rights to be protected and the unenumerated rights left unprotected? By "unprotected" I mean subject to being surrendered up to Congress to be abridged or denied at its

sole discretion. Madison stated: "The exceptions here or elsewhere in the Constitution, made infavor of particular rights, shall not be so construed as to diminish the just importance of other rights retained by the people, or as to enlarge the powers delegated by the constitution; but either as actual limitations of such powers, or as inserted merely for greater caution. What do Madison's original proposal, and his explanation of it, add to our understanding of the Ninth Amendment? First of all, Madison's placement of this provision is revealing. He put it at the end of the list of specific individual rights that he proposed be inserted in Article 1, Section 9, immediately after the two individual rights already listed there-the rights of habeas corpus and the rights against bills of attainder and ex post facto law, Madison refers to these "rights which are retained" as "natural rights," Thus, according to how Madison used the term "retained" rights, we know that the "other" unenumerated rights "retained by the people" mentioned in the Ninth Amendment fall into the second category of his original proposal. They are the natural rights "which are retained when particular powers are given up to be exercised by the Legislature." Madison contended that "[w]hen the people have formed a Constitution, they retain those rights which they have not expressly delegated." The founding generation's commitment to natural rights is expressed in the Ninth Amendment's reference to "rights retained by the people" is overwhelming. Madison proposed to Congress that the following be added as a prefix to the Constitution, "[t]hat Government is instituted and ought to be exercised for the benefit of the people; which consists in the enjoyment of life and liberty, with the right of acquiring and using property, and generally of pursuing and obtaining happiness and safety.The enumerations of the "liberties" declared within the constitution, is not a "grant" of power for the State, its officers, or the federal government and its officers, to violate them. (*NOTRE DAME LAW REVIEW Scope of Police Powers*)

THUS IS IT THE DUTY OF THIS COURT TO ENFORCE THE RIGHTS OF THE CLAIMANT AND protect against any encroachment of Constitutionally secured liberties." (SEE Boyd v. U.S., 116 U.S. 616) BECAUSE "The Constitution of these United States is the supreme law of the land.  Any law that is repugnant to the Constitution is null and void of law."(Marbury v. Madison, 5 US 137.)

"The fact the restraint on the Claimants' liberty was minimal does not make the restraint a reasonable one. The Fourth Amendment applies to all seizures of the person including those consuming no more than a minute." (United States v. Brignoni-Ponce, supra, 422 U.S. at pp. 879-880 [45 L.Ed.2d at pp. 615-616].)  (PEOPLE v. SPICER, 157 Cal.App.3d 213 [Crim. No. 45072. Court of Appeals of California, Second Appellate District, Division Seven. June 15, 1984.]

This court, pursuant of public law 97-280 is to adjudge a thief [Defendants] to pay compensation. (Ex. 21:16; Ex. 21:37; Ex. 22:1); Not to spare the offender, in imposing the prescribed penalties on them who has caused damage. (Deut. 19:13); To do unto false witnesses as they had purposed to do (to the accused) (Deut. 19:19)

**Pursuant of the Magna Carta #61; If any chief justice, officials, or any servants offend in any respect any man, transgress on his peace or security, they shall come to the courts to declare and claim immediate redress. If there be no redress within 40 days, the Claimant has right to sieze the Defendants possessions, lands, or anything else, saving only their own demain.**

**Therefore, the Judge of this Court shall issue a "Writ of Execution" in pursuance of the "True Bill and Compensation Demanded" by the Claimant, as stipulated below, within or at 40 days of the date below, if the Defendants fail to plea or respond to this matter, or schedule a trial by jury within the 40 days upon service of this Complaint upon the Defendants. The said "Writ of Execution" will be executed with the assistance of the U.S. Marshall to satisfy the remedy for the damages caused by the Defendants.**

## TRUE BILL AND COMPENSATION DEMANDED

**Injunction Relief: Order the Defendants to uphold, respect, and protect the Claimant's right of freedom of movement, right to be left alone, and prohibit the Defendants from future infringement upon the Claimant's rights to travely freely without said "driver's license."**

For the interference **by the Defendants of the Claimants freedom of movement, inconvenience, consumption of time, substantial anxiety, invasion of privacy, unwarranted and unreasonable seizure, arrest, deprivation of liberty, fraud, conspiracy to violate rights, emotional trauma** created from said unlawful stop, is with the compensation demanded in the amount of;

$250,000 U.S.D. from the AUSTIN POLICE DEPARTMENT;
$10,000 U.S.D. from MOWER COUNTY SHERIFF OFFICER JIM LAMECK;
$10,000 U.S.D. From AUSTIN POLICE DEPARTMENT OFFICER  JOHN MUELLER;
$10,000 U.S.D.  from AUSTIN POLICE DEPARTMENT OFFICER RYAN LEIF;
$10,000 from AUSTIN POLICE DEPARTMENT OFFICER RYAN MCCORMACK;
$10,000 from AUSTIN POLICE DEPARTMENT OFFICER DAVE DYKE

for the total amount of  $300,000 U.S.D.

Dated this *14th* day of *May* 2019

By: _____

The witnesses below witnessed the violation of the Claimant's rights take place at the location and time of the offense committed by the Defendants. (*Deuteronomy 19:15 "A lone witness is not sufficient to establish any wrongdoing or sin against a man, regardless of what offense he may have committed. A matter must be established by the testimony of two or three witnesses.*)

Witness: Joseph Marmol Rey TM

Witness: Julie A. Marroquin Rey

Address/Mailing Location
of Claimant:

14006 Le Roy, Minnesota
State Highway 56

507-606-2638

24