UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Benjamin Stayton,[1]

Plaintiff,

v.

Mower County Sheriff Office, Officer Jim Lamecker, Austin Police Department, Officer John Mueller, Officer Ryan Leif, Officer Ryan McCormack, Officer Dave Dyke,

Defendants.

Case No. 19-cv-1294 (DWF/TNL)

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Austin Police Department's Motion to Dismiss, (ECF No. 17), and Jim Lamecker and Mower County Sheriff Office's Motions to Dismiss and to Declare Plaintiff a Vexatious Litigant, (ECF Nos. 23, 29). The motions were referred for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.2. (ECF No. 3). This Court recommends Defendants' motions be granted.

**I. BACKGROUND**

Stayton, proceeding pro se, commenced this action by filing a Complaint on May 16, 2019. Stayton asserts causes of action under 42 U.S.C. § 1983 for deprivation of rights, privileges, or immunities secured by the Constitution, 18 U.S.C. § 241 for "conspiracy

---

[1] Stayton filed this action anonymously under a "John-Henry Doe" pseudonym. Stayton later filed an ex-parte motion to proceed anonymously. (ECF No. 5). The Court denied Stayton's motion. (ECF Nos. 11, 35).

1

against rights," and 18 U.S.C. § 245 for interfering with his right to travel in interstate commerce on account of race, color, religion, or national origin. (Compl. at 1–2, ECF No. 1).

Stayton asserts that he was at the Mower County Courthouse where he visited with Mower County Sherriff Officer Jim Lamecker. (Compl. at 2). Stayton alleges that he was driving his vehicle a few blocks away from the courthouse when he was stopped by Officer McCormack of the Austin Police Department. (Compl. at 3). According to the complaint, Officer McCormack told Stayton that Officer Lamecker radioed him with instructions to stop Stayton because he was driving without a valid driver's license. (Compl. at 3). Stayton alleges that additional officers arrived at the scene, with the effect of intimidating him, and that he was issued a citation for driving after cancellation under Minn. Stat. § 171.24, subd 3. (Compl. at 3). This series of events, Stayton alleges, amounts to conspiracy to deprive him of his right to travel freely, "paper terrorism," extortion, unlawful arrest, and "criminal racketeering." (Compl. at 3–4).

Stayton maintains that because he once obtained a valid permit and driver's license in the past, there is sufficient evidence and proof that he is qualified to drive an automobile and provide due care, which is the only thing he owes to the public while traveling on the public-roadways. (Compl. at 3–4). He explains that he cancelled his "contract" with Minnesota's vehicular regulatory body[2] roughly two years ago and reserved his unalienable right to travel without a licensing contract, while adding:

---

[2] Stayton refers to this agency as the Department of Motor Vehicles, but in Minnesota the agency is the Department of Public Safety.

> There is absolutely no reason, as evidence and case laws prove . . . for the Claimant to continue "purchasing" a "plastic card" from the private business called the "DMV" and be forced to be associated with said private business in order to exercise his unalienable rights to go about his private life in his private property and be left alone from government intrusion and deprivations of freedoms as the Defendants caused to happen.

(Compl. at 4).

## II. DISCUSSION

Defendants Austin Police Department and Mower County Sherriff's Office move to dismiss Stayton's complaint.[3] Both the Austin Police Department and Mower County Sherriff's Office seek dismissal under Rule 12(b)(6), arguing that they are not entities subject to suit, and suggest that a number of governmental immunities bar Stayton's claims against the individual defendant officers. (ECF No. 19, at 1–2; ECF No. 25, at 2).

As an initial matter, the Court notes that Stayton's claims against the Austin Police Department and Mower County Sherriff's Office are improper. Municipal police departments, such as the Austin Police Department, are not legal entities that are subject to suit. *Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 709 (D. Minn. 2015). Rather, they are departments or subdivisions of their city government, and the municipality must be properly served. *Id.* Similarly, the Mower County Sherriff's Office is not a legal entity subject to suit. *See, e.g.*, *Simon v. Anoka County Soc. Servs.*, Case No. 12-cv-2754 (SRN/JSM), 2014 WL 6633077, at *7 (D. Minn. Nov. 21, 2014); *Tisdell v. Crow Wing County*, Case No. 13-cv-2531 (PJS/LIB), 2014 WL 1757929, at *3–4 (D. Minn. Apr. 20,

---

[3] Mower County Sherriff's Office filed its motion on behalf of itself and Defendant Lemecker. The Austin Police Department filed its motion on its own behalf and that of Defendants Mueller, Lief, McCormack, and Dyke.

2014); *In re Scott County Master Docket*, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987). Therefore, Stayton's claims against the Austin Police Department and Mower County Sherriff's office should be dismissed.

   A. **Legal Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. Dismissal under Rule 12(b)(6) is designed to eliminate actions that are "fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The Court construes the complaint in the light most favorable to the nonmoving party. *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). And while the Court liberally construes pro se complaints, pro se litigants must still allege sufficient facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

   B. **Analysis**

The first step in determining whether the complaint states a plausible claim for relief is identifying the well-pleaded factual allegations. Notwithstanding Rule 8 of the Federal Rules of Civil Procedure requirement that the complaint set forth a "short and plain

statement of the claim," Stayton's complaint (and corresponding exhibits) contains 32 pages of factual assertions, argument, and authority. Stayton's pleading is obfuscated by references to religious text, inapplicable cases and statues, and conclusory arguments.[4] The crux of Stayton's argument is that he has an "unalienable right to travel" and that he be able to exercise such right without interference from law enforcement or regard to Minnesota's driver licensing requirements.

Stayton is correct insofar as the existence of a constitutional "right to travel," but he overstates the scope of that right. The Supreme Court has made clear that states may constitutionally regulate the use of public highways by licensing drivers and that "[a]ny appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process." *Reitz v. Mealey*, 314 U.S. 33, 36 (1941), *overruled on other grounds*, *Perez v. Campbell*, 402 U.S. 637 (1971); *see also Delaware v. Prouse*, 440 U.S. 648, 658 (1971) ("[T]he states have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles."). Accordingly, it is a violation of Minnesota law for a person to operate a motor vehicle in Minnesota after that person's driver's license has been cancelled. Minn. Stat. § 171.24, subd. 3.

---

[4] For example, Stayton's complaint provides not that he is a citizen, but a: "Man (Genesis 1:26) with 'dominion over the land,' Moor: National, with unalienable 'birth rights' secured by the Federal and state Constitutions, operating in 'original jurisdiction,' as one of the 'original people.'" (Compl. at 1). It further asserts that the Defendant officers are "highwaymen" or bandits; traffic infractions are civil violations that may only be brought against corporations; and the Magna Carta and Book of Exodus provide controlling authority in this case. (Compl. at 5, 16, 23).

"It is well established that even a minor traffic violation provides probable cause for a traffic stop." *United States v. Williams*, 429 F.3d 767, 771 (8th Cir. 2005); *Prouse*, 440 U.S. at 653, 663. Stayton concedes that Officer McCormack stopped him because Officer McCormack knew that Stayton did not have a valid driver's license. (Compl. at 3). Stayton asserts that law enforcement at the courthouse ran his driver's license and then conveyed the fact that he did not have a valid license to other officers. This provided sufficient basis for stopping Stayton. *See United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996) ("[S]o long as police have probable cause to believe that a traffic violation has occurred, the stop is valid . . . ."). Consequently, Stayton's complaint does not allege facts, taken as true, that would support a claim to relief on the basis of the traffic stop.

Stayton also asserts that the Defendants violated his rights by effectuating an unlawful arrest. Even under the facts alleged by Stayton, there was no arrest. He was detained, issued a citation, and then allowed to leave. In addition, the Supreme Court has held that an officer may arrest an individual without violating the Fourth Amendment so long as he or she has probable cause to believe that individual committed even a very minor criminal offense in that officer's presence. *Atwater v. City of Lago Vista*, 535 U.S. 318, 354 (2001). Here, law enforcement knew and observed Stayton had no valid driver's license and was driving in violation of Minnesota law. Moreover, even though Minnesota Rule of Criminal Procedure 6.01 requires police officers to issue citations for misdemeanors, unless one of the factors articulated in the Rule reasonably appears to be present, violation of such a state rule would not create a federal constitutional violation for purposes of a Section 1983 claim. *Beltran v. Rollie*, Case No. 17-cv-1118 (PAM/HB), 2018

WL 2371762, at *4 (D. Minn. May 24, 2018); *Parada v. Anoka Cty.*, 332 F. Supp. 3d 1229, 1241 (D. Minn. 2018) ("But while States may regulate arrests however they wish, 'state restrictions do not alter the Fourth Amendment's protections.' The Court's only concern is whether Oman had probable cause to arrest Parada; whether Oman violated Rule 6.01 does not affect the Fourth Amendment analysis.") (quoting *Virginia v. Moore*, 553 U.S. 164, 166 (2008)). So, even if Stayton's interaction with police were considered an arrest, the purported violation of Minnesota Rule 6.01 creates no violation of the United States Constitution. Most important, however, is that the facts point to the opposite and so does the law. Stayton was only detained and then permitted to leave. Thus, there was no unlawful arrest.

Taking every fact in the complaint as true, and drawing every inference in favor of Stayton, the complaint does not state a claim to relief that is plausible on its face. Accordingly, this Court recommends dismissing Stayton's complaint with prejudice.[5]

### III. MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT

Mower County moved to Declare Plaintiff a Vexatious Litigant, (ECF No. 29), seeking an order requiring Stayton to obtain approval before filing any future actions against Mower County, its officials, or its employees.

---

[5] Moreover, Stayton's arguments constitute those made by Sovereign Citizens. These arguments have been repeatedly and soundly rejected by all courts that consider them, and therefore, require no analysis. *See, e.g.*, *United States v. Jonassen*, 759 F.3d 653, 657 n.2 (7th Cir. 2014) (providing that Sovereign Citizen arguments can take many titles, but at their core "assert that the federal government is illegitimate and insist that they are not subject to its jurisdiction. The defense has no conceivable validity in American law." (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990))); *United States v, Sileven*, 985 F.2d 962, 970 (8th Cir. 1993) (finding similar arguments that defendant was not a federal citizen "plainly frivolous" and noting that further discussion was unnecessary).

A federal court has authority to control and manage matters pending before it, and may, in its discretion, "place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process." *See In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988). While *pro se* litigants have a right of access to the courts, that right does not ensure an unrestricted opportunity to pursue malicious or abusive proceedings. *Id.* at 1292. "Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims." *Id.* When a litigant engages in a pattern of filing frivolous claims, the court may order the litigant to obtain court approval before filing future lawsuits. *Sassower v. Carlson*, 930 F.2d 583, 584 (8th Cir. 1991).

Stayton has filed four recent lawsuits—one in 2015 and three since 2018—against Mower County. In the first action, Case No. 15-cv-2728 (JNE/TNL), Stayton alleged that as a Moorish National he was immune from the operation of Minnesota law and therefore the child support order entered in state court is illegal, and Mower County Health and Human Services Office of Child Support attempted to defraud him by requiring him to pay child support. In his application to proceed IFP, Stayton affirmed that he has no income because he did not "have, or possess, any gold or silver coins, as prescribed by United States Constitution Law." The Court dismissed the case as frivolous.

Stayton filed another action against Mower County in 2018, Case No. 18-cv-3152 (WMW/ECW), claiming that he is not required to have a driver's license and is exempt from arrest for such an offense. The magistrate judge recently recommended dismissing the case without prejudice for failure to state claims for relief.

The third action, Case No. 18-cv-3221 (WMW/KMM), was also filed in 2018. There, Stayton alleged that Mower County violated his constitutional rights by inducing him to pay child support, and that the county fraudulently induced him to make child-support payments. The district court dismissed the action without prejudice for failure to state claims for relief.

The Court finds that Stayton's litigation record warrants placement on this District's list of restricted filers. *See Rickmyer v. ABM Sec. Servs., Inc.*, Case No. 15-cv-4221 (JRT/FLN), 2016 WL 1248677, at *5 (D. Minn. Mar. 29, 2016). In reaching this conclusion, the Court has considered the applicable factors:

> (1) the party's history of litigation, particularly whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party has an objectively good faith basis for pursuing the litigation; (3) whether the party has caused needless expense to other parties or has posed an unnecessary burden on the courts; and (4) whether other sanctions would adequately protect the court and other parties.

*Westley v. Bryant*, Case No. 14-cv-5002 (PJS/BRT), 2015 WL 2242161, at*10 (D. Minn. May 12, 2015). Stayton has imposed needless expense upon Mower County and unnecessarily burdened the Court with fanciful claims mirroring sovereign-citizen claims that the Court, and others around the country, has routinely rejected. *CitiMortgage, Inc. v. Sellors*, Case No. 15-cv-1870 (PJS/TNL), 2017 WL 6398174, at *14 n.14 (D. Minn. Nov. 21, 2017) (explaining that courts around the country have rejected sovereign-citizen arguments as having no conceivable validity in American law); *see United States v. Jagim*, 978 F.2d 1031, 1036 (8th Cir. 1992) (sovereign citizen arguments "are completely without

merit, patently frivolous, and will be rejected without expending any more of this Court's resources on their discussion.").

Therefore, this Court recommends that Stayton be restricted from filing any new legal actions in this District unless he is represented by counsel or first obtains prior written authorization to file an action from a judicial officer of this District.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** as follows:

1. Defendants Austin Police Department's Motion to Dismiss, (ECF No. 17), and Jim Lamecker and Mower County Sheriff Office's Motion to Dismis, (ECF No. 23), be **GRANTED** and Plaintiff's Complaint, (ECF No. 1), be **DISMISSED WITH PREJUDICE**;

2. Defendants Jim Lamecker and Mower County Sheriff Office's Motion to Declare Plaintiff a Vexatious Litigant, (ECF No. 29), be **GRANTED** and Plaintiff Benjamin Stayton (a.k.a. Benjamin Dukhovnyy Voin Bey, Benjamin Isaiah Waidler Stayton) be restricted from filing any legal actions in this District unless he is represented by counsel or first obtains prior written authorization to file an action from a judicial officer of this District.

[Signature on following page.]

Date: January 29, 2020                                  s/ Tony N. Leung
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          District of Minnesota

## **NOTICE**

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).